### 19686

KIMBRELL'S FURNITURE COMPANY, INC., Appellant, v. Sig FRIEDMAN, d/b/a Bonded Loan, Respondent

(198 S. E. (2d) 803)

*Messrs. Irvin D. Parker* and *James B. Richardson, Jr.,* of Columbia, *for Appellant,* cite:

No Respondent's Counsel.

August 29, 1973.

LEWIS, Justice:

This action for declaratory judgment was brought by Kimbrell's Furniture Company, Inc., against the defendant, Sig Friedman, d/b/a Bonded Loan, to determine the priority of conflicting liens held by them over a new television set and tape player. The facts are not in dispute.

The liens involve two separate purchases from Kimbrell— one of a new television set by Charlie O'Neal on July 11, 1972, and the other by his wife of a tape player on July 15, 1972. Each purchase was on credit and in each instance there was executed, as security, a conditional sale contract, designated a purchase money security agreement. Later, on the same day of each purchase, O'Neal carried the item to defendant Bonded Loan (a pawnbroker) and pledged it as security for a loan—the television for a loan of $30.00 and the tape player for a loan of $25.00.

Kimbrell did not record on the public records any financing statement or notice of either of the foregoing security agreements.

Bonded Loan (pawnbroker) holds possession of the television set and tape player as security for its loan and contends that its lien is prior to the unrecorded purchase security interest of Kimbrell. The lower court sustained this contention and Kimbrell has appealed.

The question to be decided is correctly stated by appellant as follows: Is a conditional seller of consumer goods required to file a financing statement in order to perfect his security interest against a pawnbroker who subsequently takes possession of such goods as security for a loan?

Prior to the adoption of the Uniform Commercial Code (UCC), Act No. 1065, 1966 Acts of the General Assembly, now contained in Volume 2A of the 1962 Code of Laws as Section 10.1-101 *et seq.*) purchase money security interests, including conditional sales contracts for consumer goods, were required to be recorded in order to perfect such security interests against subsequent creditors including pawnbrokers. Section 60-101, 1962 Code of Laws.

Section 60-101, however, insofar as it applied to the perfection of security interests in consumer goods, has been repealed by the UCC and the provisions of the latter are controlling in the determination of the present question. Code Section 10.10-103.

Goods are classified or defined for purposes of secured transactions under Section 10.9-109. Subsection 1 defines "consumer goods" as those "used or bought for use primarily for personal, family or household purposes." The property here involved was a television set and tape player. They are normally used for personal, family or household purposes and the purchasers warranted that such was the intended use. It is undisputed in this case that the collateral involved was consumer goods within the meaning of the foregoing statutory definition.

Kimbrell clearly held a *purchase money security interest* in the consumer goods sold to the O'Neals and, by them, subsequently pledged to Bonded Loan. Section 10.9-107 (a).

When filing is required to perfect a security interest, the UCC requires that a document designated as a financing statement (Section 10.9-402) must be filed. Section 10.9-302. Contrary to the prior provisions of Section 60-101, *supra,* the UCC does not require filing in order to perfect a purchase money security interest in consumer goods. Pertinent here, Section 10.9-302(1)(d) provides:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . . . .

(d) a purchase money security interest in consumer goods; . . .

Since filing was not necessary, the security interest of Kimbrell attached and was perfected when the debtors executed the purchase money security agreements and took possession of the property. Sections 10.9-204, 10.9-303(1). Therefore, Kimbrell's security interest has priority over the security interest of Bonded Loans by virtue of Section 10.9-312(4) which provides:

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

This result is consistent with and confirmed by the residual priority rule of 10.-9-312(5)(b) providing for priority between conflicting security interests in the same collateral ". . . in the order of perfection unless both are perfected by filing . . ."

Bonded Loan, however, alleges that its interest takes priority over the security interest of Kimbrell by virtue of Section 10.9-307(1) which is as follows:

(1) A buyer in ordinary course of business [subsection (9) of Section 10.-1-201] other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though a buyer knows of its existence.

The above section affords Bonded Loan no relief. It was not a buyer in the ordinary course of business so as to take free of the security interest of Kimbrell. A buyer in the ordinary course of business is defined in subsection (9) of Section 10.1-201 as follows:

"Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.

In the Reporter's Comments to Section 10.9-307(1), *supra,* Dean Robert W. Foster points out that, under the foregoing definition, a buyer in ordinary course of business "must be 'without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party . . .' *and* the seller must be a 'person in the business of selling goods of that kind. . . .' Thus subsection (1) (of Section 10.9-307) is limited to the *buyer out of inventory* who may know of the inventory financer's security interest but does not know that the sale to him is unauthorized." (Emphasis added.)

Therefore, Bonded Loan could not have been a buyer in the ordinary course of business when O'Neal pledged the property to it, because O'Neal was not "a person in the business of selling goods of that kind."

The judgment of the lower court is accordingly reversed and the cause remanded for entry of judgment in favor of plaintiff, Kimbrell's Furniture Company, Inc., in accordance with the views herein.

Moss, C. J. and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.